Sievers v. The Peters Box and Lumber Company.

SIEVERS v. THE PETERS BOX AND LUMBER COMPANY.

[No. 17,958. Filed June 15, 1898. Rehearing denied Dec. 22, 1898.]

ELEVATORS.—*Safety Appliances on Freight Elevators Not Required.*— Owners are under no legal obligation to put safety appliances on elevators not intended to carry passengers. *p. 650.*

SAME.—*Use of Freight Elevator by Employe.*—*Assumption of Risk.*— Where it became necessary for an employe of a manufacturing company to go to an upper floor of a factory building, and instead of going by way of a stairway provided for that purpose, and with which he was familiar, he, at the invitation of a fellow servant who had no authority to extend the invitation, took passage on an eleva-

Sievers *v.* The Peters Box and Lumber Company.

tor known by him to be used only for freight, he assumed the risk incident to the carriage on such elevator. *pp. 551, 552.*

CUSTOM AND USAGE.—*Evidence.*—Evidence that on the first day a certain freight elevator was operated, on which day plaintiff employe was injured, a number of defendant company's employes, without the knowledge or consent of defendant company, passed up and down on the elevator, does not show a custom of the company to carry its employes on the elevator. *p. 652.*

ELEVATORS.—*Freight Elevator Used to Carry Employes.—Ordinary Care Required.*—In the operation of a freight elevator used to carry employes to and from their work, only ordinary care is required of the employer. *p. 653.*

SAME.—*Construction.— Negligence.*—A manufacturing company, desiring to construct in its factory building an elevator to carry freight exclusively, directed one of its employes, who was a competent millwright, to purchase the necessary materials and machinery, and superintend the construction of such elevator. The millwright employe, in compliance with such directions, procured the proper machinery and appliances from a reputable manufacturer of such material. The elevator being for the use of carrying freight was not enclosed by safety appliances. After its completion the elevator was carefully examined by the millwright employe and found to be properly constructed. On the first day of its operation the worm pinion by which the elevator machinery was geared slipped off its shaft, causing the elevator to drop, and resulting in the injury of plaintiff employe. *Held,* that the defendant company was not guilty of negligence in the construction of the elevator. *pp. 653, 654.*

MASTER AND SERVANT.—*Vice Principal.*—An employe of a manufacturing company who is given full authority to buy the necessary machinery and materials and construct an elevator is a vice principal. *p. 654.*

INTERROGATORIES TO JURY.—*Answers to, In Conflict With General Verdict.*—It is only where the answers to interrogatories are absolutely irreconcilable with the general verdict that the court is authorized to sustain a motion for a judgment on such answers notwithstanding the general verdict. *p. 655.*

SAME.—*Judgment on Answers to, When Not Made.*—In an action for damages for personal injuries a judgment will not be given to the plaintiff on answers to interrogatories in disregard of an adverse verdict, where there are no facts found from which the court could, as a matter of law, make an assessment of damages. *p. 655.*

SAME.—*Answers Not Sustained by General Verdict.—New Trial.*—It is only when the answers to the interrogatories are so inconsistent with the general verdict that judgment should be rendered thereon notwithstanding the general verdict that it is proper to assign as a

Sievers *v.* The Peters Box and Lumber Company.

cause for a new trial that the answers to such interrogatories are not sustained by the evidence, or that they are contrary to law. *p. 656.*

PRACTICE.—*Objections to Evidence Must be Specific.—Appeal.*—Objections to the introduction of evidence, to be available on appeal, must be specific. *p. 657.*

EVIDENCE.—*As to Operation of Machine After Injury.*—When the construction or operation of a machine is in issue, it is proper to permit proof of its construction and operation after an injury, where there has been no change made in the same since the injury. *p. 657.*

NEGLIGENCE.—*Evidence of Subsequent Repairs.*—Evidence of repairs made after an injury has been sustained is not admissible to show antecedent negligence. *p. 658.*

WITNESS.—*Examination.—Form of Question.*—The question, "After you saw the elevator at the carriage works, what did Kaiser say about it, if anything?" is not improper as being suggestive. *p. 658.*

EXPERT TESTIMONY.—*When Opinion of Non-expert Admissible in Evidence.*—It is permissible for a non-expert witness to express an opinion when the facts upon which the opinion is based cannot be placed before the jury. *p. 659.*

EVIDENCE.—*Offer of Proof in Presence of Jury After Objection is Sustained.—Discretion of Court.*—Whether a statement of counsel as to what a witness will testify in answer to a question to which an objection has been sustained shall be made in the presence of the jury rests in the sound discretion of the trial court. *p. 660.*

INSTRUCTIONS.—*Burden of Proof.*—An instruction to the jury that "the burden is upon the appellant to prove the material allegations of the complaint, and he cannot recover unless he has made such proof" will not be held, on appeal, to be erroneous unless the record affirmatively shows that appellee introduced evidence tending to sustain some one or more of the averments of appellant's complaint. *p. 661.*

NEW TRIAL.—*Joint Assignment of Causes For.*—When two or more rulings are assigned jointly as a cause for a new trial, to render the same available as a cause for a new trial, both of such rulings must be erroneous. *pp. 663, 664.*

From the Allen Circuit Court. *Affirmed.*

*Henry Colerick, J. E. K. France, W. G. Colerick* and *W. E. Colerick,* for appellant.

*W. H. H. Miller, F. Winter* and *J. B. Elam,* for appellee.

MONKS, J.—This action was brought by appellant against appellee to recover damages for personal injuries which he sustained by reason of the falling of an elevator in the factory of appellee. The cause was tried by a jury, and a general verdict returned in favor of appellee, and also answers to interrogatories submitted by the court at the request of the parties; and the court, over a motion for a judgment in his favor for $5,000, on the answers to the interrogatories, notwithstanding the general verdict, and for a new trial, rendered judgment in favor of appellee.

It is first insisted by appellant that the court erred in overruling his motion for judgment on the answers to the interrogatories, notwithstanding the general verdict. It is found by the answers to the interrogatories: That appellee was a corporation engaged in the manufacture of furniture in the city of Ft. Wayne, and that appellant an employe of appellee, was injured on the 15th of December, 1892, by the falling of an elevator in appellee's factory; that appellee directed Kaiser, one of its employes, to construct a freight elevator and gave him complete authority to determine the kind of elevator and the manner of its construction. Said Kaiser had never constructed an elevator, or aided in the construction of one, prior to this time. He was a competent millwright and had followed the business for twenty years, and had large experience in putting in mill machinery of all kinds, including worm gearing, and was a reasonably competent man to build the elevator in question. Appellee instructed and authorized him to procure from the Ft. Wayne Iron Works whatever was necessary and proper to construct and equip said elevator. Said Ft. Wayne Iron Works was a competent and reputable manufacturer of such materials; and Kaiser procured said firm to make and construct the wheels, pulleys,

and the worm gearing and shaft for said elevator, and he had full and complete charge of the construction of said elevator, which he constructed and attempted to put in operation in appellee's said factory, it being the one upon which appellant was injured. Said elevator was constructed and intended by appellee for carrying freight only, and not for passengers, or for the use of employes in riding to and from their places of work. Said elevator was operated by what is known as a "worm gearing," and such worm gearing is used by some of the best manufacturers of elevators, and was a reasonably proper appliance to be used in the construction and operation of an elevator. The worm gearing and other appliances for propelling said elevator were near the ceiling of the first floor of appellee's factory, in full view of a person about to ride on said elevator. There were no safety appliances of any kind attached to or used in connection with said elevator to prevent the same from falling while persons were riding in or on the same, excepting such protection as might be afforded by the worm gearing; and that such worm gearing was, in and of itself, a sufficient safety appliance, if properly fastened on the shaft, and it was the only appliance that should have been used; and that said elevator was not, at the time appellant was injured, unsafe for persons to ride upon by reason of the absence therefrom of proper and sufficient safety appliances. If at any time the elevator was above the first floor, and the worm gearing became displaced or disabled, the elevator would fall. While said elevator was being constructed, or after its completion, the attention of the president of appellee was called to the absence therefrom of safety appliances, and the necessity of their use was suggested to him. Said elevator was completed on December 15, 1892, when the first at-

tempt was made to operate it. During the forenoon of that day, the president of the appellee company called the attention of Kaiser to the fact that there was something wrong with the elevator, and that it did not work right. On said 15th day of December, the day appellant was injured, said Kaiser was in charge of said elevator, experimenting and testing the same. Appellant was a carpenter and had been in the service of appellee as such, working in and about appellee's factory, from April, 1892, until the time of his injury on December 15, and on said day was engaged in laying a floor on the third floor of said factory, or in an addition thereto, then in process of construction. That on said day appellant was in the factory, on his way to his work on one of the upper floors of said factory, when he was invited by said Kaiser to ride on said elevator; and he entered on said elevator for the purpose of being conveyed to where he was required to work, and he entered upon and rode upon said elevator solely for his own convenience or pleasure, and without invitation or request from appellee or any of its officers, but because he was invited by said Kaiser, and not otherwise; that while appellant was on said elevator, in response to said invitation, the elevator fell, and thereby fractured appellant's right leg.

Appellant, when he accepted the invitation of said Kaiser to ride on said elevator, supposed and believed that said Kaiser had authority from appellee to extend to him said invitation, and, at the time he got upon said elevator, believed that he could with safety ride thereon. That prior to the time appellant was injured, no written or printed notice was posted in appellee's factory, stating that employes must or should not ride upon said elevator; nor was appellant, prior to the time he was injured, notified by ap-

pellee, or any other person, that employes were not permitted to ride on said elevator, or that the same was unsafe or dangerous to ride in or on. Appellant knew, prior to his injury, that a new freight elevator was in process of construction, and he did not know or have any reason to believe that it had ever been operated before the day he received his injuries. Said appellant was a practical carpenter, of many years' experience, and said elevator was so constructed as to be apparent to any person of ordinary intelligence, looking at the same, that it was intended to carry freight only, and not passengers; and appellant could, by the exercise of reasonable care at the time he went on said elevator, have discovered that said elevator was intended for carrying freight only, and that the same was not provided with dogs, clutches, and brakes. There were safe and suitable stairways provided by appellee for appellant and other employes to go from the first to the third floor of said factory, and the new addition thereto; and appellant had frequently used the same, and was familiar with them and their use for going to the place where he was working on the day of his injury, and appellant had no duty to perform with reference to said elevator, and could have gone safely to his place of work at the time of the injury without going upon said elevator, and could have performed all of his duties for which he was employed by appellee without going upon said elevator. Prior to the time on said day that appellant was injured, many of the employes of appellant rode upon said elevator, and furniture and other freight owned by appellant had been transported on said elevator on said day in charge of employes of appellee, who rode on said elevator with said freight. The president and secretary of appellee corporation rode on said elevator on said day. Ap-

pellee and its officers did not know that any of its
employes other than Kaiser were riding upon said
elevator before and at the time of the accident in
which appellant was injured, nor had appellee in-
structed or authorized Kaiser to invite its employes
to ride on said elevator. That prior to appellant's in-
jury, appellee did not consent that appellant and
other men in the factory other than Kaiser should
ride upon said elevator, nor did anyone except Kaiser
have any authority or permission to ride thereon.
And appellee did not know before appellant was in-
jured that freight was being carried upon said eleva-
tor, nor did appellee before said injury direct or con-
sent by any of its officers to the use of said elevator
for carrying freight. That the falling of said elevator
was caused solely by the slipping of the worm pinion
off of its shaft, and said worm gearing was manufac-
tured and put together by the Ft. Wayne Iron Works.
Said worm pinion was examined by said Kaiser be-
fore he put it up in appellee's factory, for the purpose
of seeing whether it and the shaft were properly
put together; and he found and concluded that the
worm pinion and shaft were properly keyed and put
together before he used them in the building of said
elevator; and that said Kaiser was competent to ex-
amine and know whether said worm pinion and shaft
were properly put together. If suitable brakes, dogs,
clamps, or other safety appliances had been attached
to and used in connection with said elevator, the same
would not have fallen when said worm pinion slipped
off of its shaft; but said elevator was not unsafe on
account of the absence of proper and sufficient safety
appliances. The openings in the floor of appellee's
factory through which said elevator was operated
were also used by appellee for taking up and down
with a rope and tackle, long pieces of furniture, such

as bars and counters, and materials which could not be carried on said elevator, and the use of an enclosed elevator or an enclosed elevator shaft at said place would have prevented the taking up and down of such pieces of furniture through said openings with such block and tackle.

It is alleged in the complaint that the platform of the elevator was about six feet wide and eight feet long, and that the same was constructed to carry freight and employes of appellee. The theory of the complaint is thus stated by appellant: "The gist of the action and the theory of the complaint, as shown by its averments, was that the negligence of the appellee, which resulted in the infliction of the injuries complained of, consisted of the negligent failure and omission of appellee to attach to the elevator safety appliances such as are usually and generally used in connection with the operation of elevators, and in negligently failing to place around the platform of the elevator, railings or guards, so as to prevent persons riding on the elevator from falling therefrom by reason of the absence of such railings or guards, in case the machinery by which the elevator was moved should become disabled from any cause, and the elevator should fall."

The jury found, by the answers to interrogatories, that said elevator was constructed and intended for the transportation of freight only, and not for employes. The rule is that the owners are under no legal obligation to put safety appliances upon elevators not intended to carry passengers. *Hall* v. *Murdock* (Mich.), 72 N. W. 150; *Kern* v. *DeCastro, etc., Refining Co.*, 125 N. Y. 50, 25 N. E. 1071; *Hoehmann* v. *Moss Engraving Co.*, 4 Misc. Rep. 160, 23 N. Y. Supp. 787; Webb on Pass. & Freight Elevators, sections 17 and 23. Nor, as a general rule, does proper care re-

quire that a freight elevator be enclosed or sheathed. *Hoehmann* v. *Moss Engraving Co., supra; Boehm* v. *Mace,* 18 N. Y. Supp. 106; Webb on Pass. and Freight Elevators, section 17, *supra.*

It is also clear from the answers to interrogatories that a mere inspection of the elevator showed that it was a freight, and not a passenger, elevator, and that appellant when he entered upon the elevator, and when he was injured, knew that the same was intended for freight only, and not for passengers; that employes had used the elevator on the first day it was operated, and before appellant's injury on said day, to ride up and down on, without the knowledge or consent of appellee, does not change the fact that it was made to carry freight only, as found by the jury. *Hoehmann* v. *Moss Engraving Co., supra,* p. 162; *Morris* v. *Brown,* 111 N. Y. 318, 18 N. E. 722.

The jury also found that appellant, by the exercise of ordinary care, would have known that the elevator was not provided with such safety appliances as dogs, clutches or brakes. Under such circumstances, even if appellant rode upon the elevator at the invitation of appellee, he assumed the risk incident to carriage upon it. *Hall* v. *Murdock, supra; Shields* v. *Robins,* (N. Y.) 3 App. Div. 582. When appellant went upon the freight elevator, even if Kaiser was authorized by appellee to carry him, he took it as he found it,— open platform, without sides or rails, with notice that it was a freight elevator, and equipped as such. As was said in *Hall* v. *Murdock, supra,* "When one knows that the elevator is designed for freight alone, he must be held to know that it is not equipped with the same regard for safety that a passenger elevator is or should be." The jury found, however, that appellee did not invite appellant to ride upon the elevator, or authorize any one to invite him to do so, nor

did appellee consent that any one ride thereon except Kaiser, but that appellant rode upon the elevator at the invitation of a co-employe, solely for his own convenience and pleasure, without the knowledge or consent of appellee, and that appellee had provided safe and suitable stairways to go from one floor of the factory to the other, and that appellant had frequently used the same, and was familiar therewith, and that no duty required appellant to go upon said elevator. In handling the elevator, Kaiser, so far as the appellant was concerned, under the facts found, was only a fellow servant; and it is evident that he had no authority to invite appellant to ride upon the elevator, and that when he chose, at the invitation of a co-employe, to ride on the elevator, instead of going up the stairway provided for the use of employes, he did so at his own risk. *Hoehmann* v. *Moss Engraving Co.*, *supra*, 166; *Morris* v. *Brown*, *supra*, pp. 326, 327; *Shields* v. *Robins*, *supra;* 1 Shearman & Redfield on Negligence (5th ed.), section 190.

Under the facts found, appellant knew that the elevator was to carry freight only. Notice to him of that fact was not therefore necessary. Before he can claim that he rode upon the elevator by permission of appellee, express or implied, he must either prove that Kaiser was authorized by appellee to carry him upon the elevator, or that appellee was accustomed to carry its employes upon said elevator. No such facts were found by the jury, but, on the contrary, they expressly found that appellee never authorized any one to carry him, or any other employe, on the elevator, and that appellee had no knowledge that any employe or freight was being carried on the same. The finding does not show any custom to carry employes on said elevator, so as to be binding on appellee. The finding only shows that on the first day

the elevator was operated, and while the same was being tested and experimented with by the employe who constructed it, that a number of employes and some freight were carried upon the elevator, without the knowledge or consent of appellee, and that two of the officers of appellee rode thereon. This falls far short of showing any custom of appellee to carry its employes on said elevator, which can only be established, if at all, by showing that appellee consented to such use, or that it was so used with the knowledge of appellee under such circumstances as that an assent to such use might be implied. Even if the finding showed that the freight elevator was used by employes in going to and from their work, with the knowledge and consent of appellee, the degree of care required of appellee would be that of employer to employe, which is ordinary care. *McDonough* v. *Laupher*, 55 Minn. 501, 57 N. W. 152; Shearman & Redfield on Negligence (5th ed.), section 190; *O'Brien* v. *Western Steel Co.*, 100 Mo. 182, 18 Am. St. 536, 13 S. W. 402.

The facts found do not show that appellee was guilty of the acts of negligence alleged in the complaint, but, on the contrary, they show that it was not guilty of the acts of negligence charged. It is expressly found by the jury that the elevator was constructed to carry freight only, and not employes; and that the employe, Kaiser, directed to construct said elevator, and who was authorized to, and did, determine the kind of elevator and the manner of its construction, and who constructed the same, was a reasonably competent man to perform that work; and that the worm gearing by which said elevator was operated was used by some of the best manufacturers of elevators, and was a reasonably proper appliance to be used in the construction and operation

of an elevator; and that a worm gearing is in and of itself a sufficient safety appliance, if properly fastened on the shaft, and was the only appliance that should have been used; that the wheels, pulleys, and the said worm gearing and shaft used in the construction of said elevator were manufactured by, and the said worm gearing put together by, the Ft. Wayne Iron Works, a competent and reputable manufacturer of such materials; and that said elevator was not unsafe on account of the absence of proper and sufficient safety appliances. It is found that the falling of said elevator was caused by the slipping of the worm pinion off its shaft; but it is also found that said worm pinion was examined by said Kaiser before he put it in appellee's factory, for the purpose of seeing whether the shaft and worm pinion were properly put together, and found that they were properly keyed and put together before he used them in the building of said elevator; and that said Kaiser was competent to examine and know whether said worm pinion and shaft were properly put together; that the openings in the floor through which said elevator was operated were also used by appellee for the taking up and down, with a block and tackle, of long pieces of furniture, such as bars and counters, and materials which could not be carried on said elevator, and the use of an enclosed elevator or an enclosed elevator shaft would have prevented the taking up and down of such pieces of furniture through said openings with such block and tackle. It is true, as between appellee and its employes, if any, whose duties authorized or required them to use said elevator, Kaiser, although an employe, was, in the construction of said elevator, a vice principal, and represented the master, and his negligence, if any, in the construction of said elevator, was the negligence of

Sievers v. The Peters Box and Lumber Company.

appellee.  *Indiana, etc., R. W. Co.* v. *Snyder, Admr.*, 140 Ind. 647.  The findings do not show that Kaiser had any notice or knowledge of any defect in the construction of the elevator, or that it was unsafe. On the contrary, they show that he was a competent person to construct and inspect the same, and that on examination he found the worm pinion and shaft properly keyed and put together.

It is only where the answers to interrogatories are absolutely irreconcilable with the general verdict that the court is authorized to sustain a motion for a judgment on such answers notwithstanding the general verdict.  *Town of Poseyville* v. *Lewis*, 126 Ind. 80, 81; *Gates* v. *Scott*, 123 Ind. 459, 461, and cases cited; *Cincinnati, etc., R. R. Co.* v. *Clifford*, 113 Ind. 460, 468. The answers to the interrogatories are not in conflict with the general verdict, but are consistent therewith; neither do they sustain the allegations of the complaint.  But if there were no general verdict, and the facts found were treated as a special verdict, the judgment thereon should be for the appellee.  Moreover, appellant's motion for a judgment in his favor on the answers to the interrogatories notwithstanding the general verdict was properly overruled for the further reason that there was not in said answers any assessment of damages, nor were there any facts found from which the court could, as a matter of law, make such assessment.·

It is next insisted that the court erred in overruling the motion for a new trial.  The first and second causes for a new trial are that the verdict is not sustained by sufficient evidence, and that the same is contrary to the evidence.  These causes for a new trial are not argued by counsel for appellant in their brief, and they concede that there is such conflict in the evidence as, under the rule in this State, this

court will not weigh the evidence. *Lawrence* v. *Van Buskirk*, 140 Ind. 481, 483; *Hoskinson* v. *Cavender*, 143 Ind. 1, 2; *Steele* v. *Empsom*, 142 Ind. 397, 405.

The next cause assigned for a new trial is that the answers to special interrogatories 9, 13, 14, 18 and 34, are not sustained by sufficient evidence. The answers to these interrogatories are not inconsistent with the general verdict, but support it. It is only when the answers to the interrogatories are so inconsistent with the general verdict that judgment should be rendered thereon notwithstanding the general verdict that it is proper to assign as a cause for a new trial that the answers to such interrogatories are not sustained by the evidence, or that they are contrary to law. In such case the general verdict is disregarded, and judgment rendered on the answers to the interrogatories. The answers to the interrogatories in such a case are, in effect, the verdict upon which the judgment must be rendered. In this case, however, the general verdict was in favor of the defendant, and the answers to the interrogatories mentioned in the motion for a new trial were not inconsistent therewith, and no judgment could be rendered thereon. Said cause for a new trial, therefore, presents no question for our decision. *Staser* v. *Hogan*, 120 Ind. 207, 228; *Chicago, etc., R. R. Co.* v. *Kennington*, 123 Ind. 409, 410; *New York, etc., R. R. Co.* v. *Baltz*, 141 Ind. 661, are cited to support the contention that a new trial will be granted when the answers to interrogatories are not sustained by the evidence; but in such case, the cause assigned for a new trial should be, not that the answers to the interrogatories are not sustained by the evidence, but that the verdict is not sustained by the evidence. Said cause for a new trial, therefore, presents no question for our decision. There was evidence, however, sustaining the answers

to said interrogatories; and even if the said cause for a new trial presented any question, under the well settled rule, we could not review and weigh the evidence.

The court permitted one Seibold, a witness for appellee, to testify that the elevator was so constructed that it could be worked by a person standing upon any of the floors of the building by means of ropes. This witness testified as to the manner of operating the elevator after the injury of appellant, and that the means and appliances for operating the elevator were the same before the injury as afterwards. Appellant assigns this action of the court as cause for a new trial. The only objection made to the introduction of this evidence was, that appellant "objected to any testimony showing the mode of operating the elevator since the accident occurred." No reason was stated or pointed out to the trial court why said evidence should not be admitted. The rule is that, unless objections to the evidence are specific, they are insufficient. *Fowler* v. *Wallace*, 131 Ind. 347, 348, and cases cited; *Stanley* v. *Holliday*, 130 Ind. 464, 467; *Litten, Admr.*, v. *Wright School Township*, 127 Ind. 81, 83, and cases cited.

One Crawford, a witness for appellee, testified that, before the injury to appellant, the person sending freight up and down in the elevator could remain upon the floor from which said freight was sent, and operate the elevator. The witness then testified that, after the injury, the freight was raised or lowered in the elevator, and the person raising or lowering the same remained on the floor where the elevator was loaded, and operated the same. To this evidence appellant objected, on the ground that the same was self-serving in its nature. The evidence showed that the

elevator was the same after the accident as before; that the same had not been changed in any way. As to its manner of being operated it was proper to prove the manner of construction of said elevator and how it was and could be operated before and at the time of the accident. And when it had not been changed in any way, but is the same after the accident as before, evidence of its construction and how it could be operated after the accident was properly admitted to prove its condition, construction, and how it could be operated, before the accident. It is a common thing, when the construction or operation of a machine or machinery, and whether the same is defective or otherwise, is in issue, to permit proof of its construction and operation, etc., after an injury, where there has been no change made in the same since the injury.

The court did not err in refusing to permit appellant to prove by a witness that, after appellant received the injury complained of, the worm gearing connected with the elevator was fastened differently by being riveted on the shaft to which it was attached. *Board, etc.,* v. *Pearson,* 129 Ind. 456, 457; *Terre Haute, etc., R. R. Co.* v. *Clem,* 123 Ind. 15, 7 L. R. A. 588.

Charles Pape, president of the appellee, while on the stand as a witness for appellee, testified that he and one Kaiser, an employe who had built elevators, went to look at an elevator in the City Carriage Works. Appellee then propounded this question to the witness: "After you saw the elevator at the carriage works, what did Kaiser say about it, if anything?" To this question appellant objected, on the ground that "it is improper and suggestive; that it suggests to the witness that Mr. Kaiser did say something to him after that, the witness not having testi-

fied that Mr. Kaiser did say anything." This objection was overruled, and the witness answered the question. The question was not suggestive, but only required the witness to state what Mr. Kaiser said, if anything. The question even if improper, was not open to the objection made, and the court did not err in overruling the same. Objections were made to other questions propounded to this witness, but they were made after the witness had answered the questions, and therefore, came too late.

Appellant next contends that the court erred in permitting G. P. Diutenhaven, a witness for appellee, to testify, over appellant's objection, that if there was a worm gearing on his elevator, or on an elevator constructed like it, he would consider it a safe appliance for hauling freight. Appellant objected to the question which elicited the evidence, on the grounds "that the witness has not shown himself qualified to speak, also that it does not appear that the witness has sufficient knowledge and information relative to elevators to express an opinion upon it, and that it is incompetent to compare the elevator in this action with the one owned by the witness, for the purpose of determining its safety as contrasted or otherwise used." It is true that it is error to permit one who is not an expert to express an opinion upon a question with relation to which all the facts may be placed before the jury; yet it is permissible for a witness to give such opinion when the facts cannot be placed before the jury. *Brunker* v. *Cummins*, 133 Ind. 443, 448, and cases cited; *Bennett* v. *Meehan*, 83 Ind. 566, 43 Am. Rep. 78, and cases cited; *Loshbaugh* v. *Birdsell*, 90 Ind. 466, 467; *Indiana, etc., R. W. Co.* v. *Hale*, 93 Ind. 79, 81-82; *Carthage Turnpike Co.* v. *Andrews*, 102 Ind. 138, 142-144, and cases cited; *Clark Civil Township* v. *Brookshire*, 114 Ind. 437, 444-445.

This witness had testified without objection that he had observed worm gearings and their operation on elevators, and that he considered a worm gearing a safe appliance to prevent an elevator from falling; but the construction of the worm gearing and the elevator, and the manner of attaching the same to the elevators, and the manner of operating the same, cannot be described to a jury as it appeared to the witness. In such case, the witness, not an expert, may express his opinion. It is clear that the objection that the witness was not an expert was properly overruled. The remainder of the objection seems to be meaningless, or at least indefinite and uncertain. The evidence, even if erroneously admitted, however, was harmless, for the reason that the theory of appellant's case was that the elevator in this case was for freight and employes both, while the testimony of the witness was only that if there was a worm gearing on his elevator (which carried freight only), or one constructed like his, that he would consider it safe. Under the issues such evidence could not have harmed the appellant.

During the progress of the trial, appellee called a witness, and propounded to him questions to which appellant objected; and, the same being sustained, counsel for appellee stated what they proposed to prove by said witness. Appellant objected to the statement being made in the presence and hearing of the jury, which was overruled by the court. Counsel for appellee called two other witnesses, and offered to prove the same thing by them. Appellant objected to the said offer to prove the same fact being repeated in the presence and hearing of the jury. Whether the statement of counsel as to what a witness will testify in answer to a question to which an objection has been sustained shall be made in the

presence of the jury rests in the sound discretion of the trial court; and, unless it is clearly shown by the record that such discretion has been abused, the decision of the trial court upon such question will not be reversed. No abuse of that discretion is shown by the record in this case. When an offer to prove is once fully made, and the question sought to be saved is fully presented, there is no necessity to repeat the offer to prove, and a repetition of the offer is at least subject to censure, whether a ground for reversal or not. The trial court was able to observe the effect, if any, of such offer to prove; and, unless the contrary is shown by the record, the presumption is that no injurious effect followed such offer to prove, or, if it did, that the same was properly corrected by the court. *Vannoy* v. *Klein*, 122 Ind. 416, 419,420; Elliott App. Proc., sections 701, 703. See *Pfaffenback* v. *Lake Shore, etc., R. W. Co.*, 142 Ind. 246, 249; *Miller* v. *Dill*, 149 Ind. 326; *Robb* v. *State*, 144 Ind. 569, 571,572.

Complaint is made by appellant in regard to certain instructions because the jury were informed that "the burden is upon the appellant to prove the material allegations of the complaint, and he cannot recover unless he has made such proof." It is true, as argued by appellant, that if averments in a complaint or an answer in confession and avoidance, or any one of them, are established by a fair preponderance of the evidence in a case, it is sufficient, whether the party having the burden of proof as to such averments or his adversary introduced such evidence. But there is no presumption that any party to a cause has given any evidence to establish his adversary's case or defense. Therefore, unless the record in this case shows affirmatively that appellee introduced evidence tending to sustain some one or more of the aver-

ments of appellant's complaint, said instruction was not erroneous. It is not claimed by appellant that any such evidence was given. In any event, it would seem, however, that the use of the words complained of was a mere verbal inaccuracy, which could not have misled the jury or harmed appellant.

We have examined the other instructions of which complaint is made by appellant, and do not think them open to the objections urged, although they may contain some verbal inaccuracies, but they are not such as would be misleading. But even if said instructions were erroneous as urged, appellant has no grounds for complaint, for the reason that the answers of the jury to the interrogatories show that the instructions given did not injure him. Under said facts, appellant would not, in any event, be entitled to a judgment in his favor. The instructions, therefore, even if erroneous, did not harm appellant, unless the answers to the interrogatories were influenced by said instructions. *Ricketts* v. *Harvey*, 106 Ind. 564; *Cline* v. *Lindsey*, 110 Ind. 337, 348; *Moore, Admr.*, v. *Lynn*, 79 Ind. 299, 301; Elliott's App. Proc., section 642. Said instructions, however, were general instructions as to the law, and could in no way influence the answers to interrogatories. Finding no available error in the record, the judgment is affirmed.

## ON PETITION FOR REHEARING.

PER CURIAM.—Upon the facts found by the jury in answer to the interrogatories, appellant was not entitled to a judgment against appellee even if the general verdict had been rendered in his (appellant's) favor. In no event, therefore would appellant, under the facts found, be entitled to recover. In such a case he cannot complain of the instructions given,

however erroneous they may be, because they were harmless.  Judge Elliott, in his work on App. Proc., section 642, said:  "If it affirmatively appears from the record that in no event can the complaining party recover upon the facts, errors in the instructions, however flagrant, may be regarded as harmless."  It is immaterial, therefore, whether the instructions complained of by appellant, except those in regard to the burden of proof, were or were not erroneous.  It was not necessary or proper, therefore, to set out said instructions, and appellant's objections thereto, in the opinion of the court, and determine whether or not they, or either of them, were erroneous.

On a re-examination of the record, we find that appellant objected at the proper time to two questions answered by Charles Pape, a witness for appellee, instead of one, as stated in the original opinion; and appellant asks in his petition for a rehearing that we "decide as to the competency" of the one not considered.  The question referred to by appellant was asked the witness Pape in regard to the purpose for which he took Kaiser, the employe who built the elevator, to see the elevator at the City Carriage Works.  The action of the court in overruling the objection to said question, and permitting the same to be answered, is not assigned as a separate cause for a new trial but said action of the court, and the action of the court in overruling the objection to the question as to what Kaiser said after he saw the elevator at the carriage works, and permitting the same to be answered (considered in the original opinion), were jointly assigned as one of the causes for a new trial.  If the court did not err in both of said rulings, then said specification constitutes no ground for a new trial, for the reason that it is well settled that, when

two or more rulings are assigned jointly or in gross as a cause for a new trial, to render the same available as a cause for a new trial both of such rulings must be erroneous. *Indiana, etc., R. W. Co.* v. *Snyder, Admr.*, 140 Ind. 647, 649, and cases cited; *Lawrence* v. *VanBuskirk*, 140 Ind. 481, 482; *Hannan* v. *State*, 149 Ind. 81, 82; *Masterson* v. *State*, 144 Ind. 240, 246; *Conrad* v. *State*, 144 Ind. 290, 297.

It was held in the original opinion that the court did not err in overruling the objection to the question in regard to what Kaiser said after he saw the elevator at the carriage works. It follows, therefore, under the authorities cited, that said cause for a new trial is not available, even if the trial court erred in overruling appellant's objection to the other question mentioned in said specification for a new trial, being the one mentioned in appellant's petition for a rehearing. But suppose the question we are asked to decide was properly presented by the record; was reversible error committed? The answer to said question was, in effect, that the witness took Kaiser to see the elevator at the carriage works, because he wanted his judgment as to whether that elevator would be sufficient. It is evident that said answer could not have influenced the jury as to any fact found, or as to any issue in the case. Such question and answer may have been immaterial, but certainly the same did not prejudice the appellant.

The other questions presented were fully considered and determined in the original opinion, and, after a careful review of the same, we are satisfied that there are no legal grounds for a reversal of the judgment of the trial court. The petition for a rehearing is therefore overruled.